NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| JOHNEY PHAM, | : | |
| | : | |
| Petitioner, | : | |
| | : | Civ. No. 99-4450 (GEB) |
| v. | : | |
| | : | |
| UNITED STATES OF AMERICA, | : | **MEMORANDUM OPINION** |
| | : | |
| Respondent. | : | |

**BROWN, Chief District Judge**

This matter comes before the Court upon the motion of Petitioner Johney Pham, by his counsel, Michael Paul ("Petitioner"), to vacate, set aside or correct his sentence pursuant to Title 28, United States Code, Section 2255. For the reasons set forth in this Memorandum Opinion, issued without oral argument pursuant to Federal Rule of Civil Procedure 78, Petitioner's motion is denied.

## I.  FACTUAL BACKGROUND

In or about 1991, a criminal organization began engaging in the smuggling of over 400 illegal aliens from China to the United States. *United States v. Pham*, 173 F.3d 422 (3d Cir. 1998). Generally, the illegal aliens would be put aboard overcrowded ships which lacked both food and water. (Respondent's Brief, p. 5). When the ships would reach the East Coast of the United States, smaller fishing boats would transport the illegal aliens to shore, where they would be put in "safe houses" which were guarded by members of the criminal organization. (*Id.*). During their time at the safe houses, the illegal aliens were often beaten. (*Id.*). The illegal aliens

would then be required to telephone their relatives back home for ransom money totaling approximately $30,000 per illegal alien.  (*Id.*).

In trial, evidence was presented that showed that in March, 1993, the fishing vessel Captain David transferred about 200 aliens into Virginia following a voyage that started in September, 1992.  The aliens were transferred to safe houses in Connecticut by truck upon the arrival of the Captain David.  Thereafter, the leaders of the criminal organization became concerned about an unwanted discovery of the safe houses.  Petitioner was approached concerning a home he maintained in Edison, New Jersey.  Petitioner permitted his home to be used to hold the aliens hostage.  He further assisted in obtaining guns for enforcement, counting ransom money, and enforcing the confinement of the aliens.  Petitioner additionally provided the telephone services needed to have the aliens call their relatives.  *Pham* at 423.

Trial evidence further showed that in May, 1993, another boatload of 116 aliens left China and arrived at Cape May County, New Jersey.  From there, the aliens were transferred via trucks to safe houses in New York and New Jersey.  Although Petitioner did not provide a safe house for any of the 116 aliens of this group, he did provide guns used to guard the aliens.  (*Id.*).

## II.  PROCEDURAL BACKGROUND

On March 15, 1995, a federal grand jury in this district indicted Petitioner and fourteen other defendants in a 27-count Second Superseding Indictment.  (Presentence Report at ¶ 2; Petitioner's Brief at p. 1; Respondent's Brief at p. 1).  The Indictment charged conspiracy under the Racketeer Influenced and Corrupt Organizations Act ("RICO") for criminal activities relating to the smuggling of illegal aliens through a pattern of activity including kidnapping, extortion, robbery, use of extortionate means to collect an extension of credit, interference with interstate

2

commerce by means of extortion, and traveling in interstate commerce in aid of racketeering. (PSR at ¶ 3; *Id.*).

On September 25, 1995, Petitioner moved to dismiss the Second Superseding Indictment on the basis that the conspiracy alleged in that Indictment was the same conspiracy alleged in a parallel indictment in the southern District of New York.  (Petitioner Brief, p. 2).  That motion was denied on December 6, 1995, which held that the RICO conspiracy alleged in the District of New Jersey and the conspiracy charges in the Southern District of New York were sufficiently distinct to satisfy the United States Supreme Court *Blockburger* test.  (Respondent's Brief, p. 1).

On February 9, 1996, the government filed a nine-count Supplemental Redacted Second Superseding Indictment against Pham and three co-defendants, which reflected the redaction of co-defendants who had since pled guilty or were fugitives.  (Petitioner's Brief, p. 2; Respondent's Brief, p. 2).  Petitioner and his co-defendants were tried on this Indictment and on February 15, 1996, Petitioner was found guilty of the following counts: Count One (RICO Conspiracy); Count Two (conspiracy to collect extensions of credit by extortionate means); Count Three (conspiracy to interfere with commerce by threats of violence); Count Four (transportation of illegal aliens within the United States); Count Five (concealment, harboring and shielding aliens from detection); Count Six (kidnapping); Count Seven (hostage taking); and Count Nine (receipt of firearms with intent to commit offense).  (Petitioner Brief, pp. 2-3; Respondent's Brief, p. 2).

On February 9, 1998, Petitioner was sentenced to a term of 235 months' imprisonment. Petitioner thereafter appealed his conviction to the Third Circuit Court of Appeals.  Petitioner's appeal consisted of claims that the Double Jeopardy Clause was violated.  The Third Circuit

denied Petitioner's appeal by unpublished opinion dated December 15, 1998.[1]  (*Id.*).

On September 20, 1999, Petitioner filed the instant § 2255 motion to vacate, set aside, or correct his sentence.  Petitioner alleges that his trial counsel was ineffective because he failed to: object to erroneous jury instructions on reasonable doubt, *Pinkerton* liability, and the RICO operation or management test; call an alibi witness; accurately advise Petitioner as to the law applicable to his case and thus prevented him from accepting the government's plea offer; object to Petitioner's prosecution on both the kidnapping and hostage taking counts; object to various Sentencing Guideline issues, including grouping, level enhancements for ransom demands, the use of a firearm during a kidnapping, ex post facto claims including vulnerable victim enhancement, hostage taking conviction and conspiracy; adequately inform the court of Petitioner's particular circumstances and mitigation factors during sentencing.  (Petitioner's Brief, p. 13).

On February 28, 2000, the Respondent filed its Answer, and then its initial Memorandum of Law in Opposition to the Petition on April 4, 2000.  On November 16, 2006, this case was reassigned to the undersigned.  In or about December, 2006, Petitioner filed his Memorandum of Law in support of his Petition.  On January 17, 2007, Respondent filed its Second Memorandum of Law in opposition to Petitioner's § 2255 motion.  (Docket Report).

---

[1]  Petitioner also appealed his Southern District of New York sentence, which was upheld by the Second Circuit Court of Appeals in 1998.

III.    DISCUSSION

A.      § 2255 Standard

Section 2255 of Title 28, of the United States Code, permits a court to vacate, correct or

set aside a sentence that:

> [W]as imposed in violation of the Constitution or laws of the
> United States, or that the court was without jurisdiction to impose
> such sentence, or that the sentence was in excess of the maximum
> authorized by law, or is otherwise subject to collateral attack . . . .

28 U.S.C. § 2255.  However, "section 2255 'may not be employed to relitigate questions which

were raised and considered on direct appeal.'"  *United States v. DeRewal*, 10 F.3d 100, 105 n.4

(3d Cir. 1993) (quoting *Barton v. United States*, 791 F.2d 265, 267 (2d Cir. 1986), *cert. denied*,

511 U.S. 1033 (1994));  *Pitre v. United States*, 874 F. Supp. 72, 73 (S.D.N.Y. 1995); *see also*

*United States v. Jones*, 918 F.2d 9, 10 (2d Cir. 1990); *Giacalone v. United States*, 739 F.2d 40,

42 (2d Cir. 1984).  Moreover, if a petitioner has failed to raise an objection at the time of trial

and has also failed to raise the issue on direct appeal, then collateral review of that claim is

procedurally barred unless the petitioner is able to show "cause" excusing his procedural default

and "actual prejudice" resulting from the alleged error or violation.  *Henry v. United States*, 913

F. Supp. 334 (M.D. Pa. 1996), *aff'd*, 96 F.3d 1435 (3d Cir. 1996); *see also United States v. Essig*,

10 F.3d 968, 979 (3d Cir. 1993) (holding that the "cause and prejudice" standard set forth in

*United States v. Frady*, 456 U.S. 152 (1982), "applies to § 2255 proceedings in which a

petitioner seeks relief from alleged errors in connection with his sentence that he has not directly

appealed").  However, a petitioner need not demonstrate cause and prejudice when he raises a

claim of ineffective assistance of counsel for the first time in a collateral attack.  *DeRewal*, 10

F.3d at 104.

### B.   Ineffective Assistance of Counsel

The cause of action for ineffective assistance of counsel flows from the Sixth Amendment right to counsel, which exists "in order to protect the fundamental right to a fair trial." *Lockhart v. Fretwell*, 506 U.S. 364, 368 (1993).  To prevail on a claim of ineffective assistance of counsel, a petitioner must demonstrate:

> First, . . . that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires a showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland v. Washington,* 466 U.S. 668, 687 (1984).

To satisfy the actual prejudice prong of the *Strickland* test, Petitioner must show "that counsel's errors were so serious as to deprive [Petitioner] of a fair [hearing] whose result is reliable." *Lockhart,* 506 U.S. at 369.  Prejudice is not simply a question of whether the outcome may have been different but for the counsel's error; rather the focus is on whether the result of the proceeding is fundamentally unfair or unreliable.  *Id*.  But "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment."  *United States v. Gray*, 878 F.2d 702, 710 (3rd Cir. 1989).

### i.   *jury instructions*

Petitioner first alleges, in his § 2255 motion, that his trial counsel failed to object to "erroneous" jury instructions regarding reasonable doubt, *Pinkerton*, the RICO operation and

management test, the elements of kidnapping and hostage taking and specific intent.  Petitioner alleges that these errors, either alone or in concert, satisfy the *Strickland* standard and show ineffective assistance of counsel.

When a petitioner attempts to demonstrate that an erroneous instruction so prejudiced a jury as to require a reviewing court to alter, vacate or set aside a sentence in response to a collateral attack, the petitioner carries a burden that "is even greater than the showing required to establish plain error on appeal."  *Henderson v. Kibbe*, 431 U.S. 145 (1977).  "The question in such a collateral proceeding is 'whether the ailing instruction by itself so infected the entire trial that resulting conviction violates due process,' (*Cupp v. Naughten*, 414 U.S. at 147), not merely whether the 'instruction is undesirable, erroneous, or even 'universally condemned.'" *Id.* Keeping in mind the difficult standards set forth in *Strickland* and *Cupp*, the Court will address each of Petitioner's jury instruction issues in turn.

### a.    reasonable doubt

Here, Petitioner argues that the jury instructions regarding reasonable doubt set forth a "two-inference" example which "improperly gave the jury the option to weigh the evidence from both sides and reach a conclusion by a preponderance of that evidence . . .[suggesting to the jury] that the standard is lower than it is ["preponderance of the evidence" civil standard as opposed to "beyond a reasonable doubt" criminal standard].

In instructing a jury at the conclusion of a criminal trial, a court must convey the burden of proof of reasonable doubt.  *United States v. Isaac*, 134 F.3d 199 (3d Cir. 1998).  To determine whether a trial court has adequately conveyed the burden of proof to a jury, the reviewing court must consider the instructions as a whole.  Due process is satisfied if the instructions as a whole

7

accurately convey the concept of reasonable doubt to a sitting jury.  *Id.*

The trial court in Petitioner's criminal case provided detailed jury instructions that took approximately two days to read to the jury.  The relevant portion that defined reasonable doubt was provided to the jury as follows:

> In all criminal cases we start with the proposition that a defendant does not have to prove his innocence.  On the contrary, he is presumed innocent of the crimes charged.  This presumption of innocence is removed only if and when you are satisfied that the government has sustained its burden of proving a defendant's guilt beyond a reasonable doubt.
>
> So the presumption of innocence alone is sufficient to acquit a defendant unless the jurors are satisfied beyond a reasonable doubt of the defendant's guilt after careful and impartial consideration of all the evidence in the case.
>
> Now, a reasonable doubt, ladies and gentleman, is pretty much exactly as it seems. It is a doubt that a reasonable person would have after carefully weighing all of the evidence, or the lack of evidence.  It may be said to exist in any case when after a careful consideration of all the evidence a reasonable person would be unwilling to rely upon that evidence in a matter of importance in his or her own affairs.
>
> A reasonable doubt is not a possible doubt or a fanciful doubt.  Vague, speculative or imaginary doubts, qualms or misgivings are not reasonable doubts.  Neither are arbitrary and tangential notions asserted by a juror because of his or her reluctance to perform a difficult task or to avoid the performance of an unpleasant duty.
>
> Importantly, a reasonable doubt is not a doubt arising from the natural tendency to have sympathy or compassion for another.  A reasonable doubt is one that appeals to your judgment and common sense.
>
> It is not necessary for the government to prove the guilt of a defendant beyond all possible doubt or to a mathematical certainty.  If that were the rule, few persons would ever be convicted, however guilty they might be.  The reason is that in this world of ours, it is practically impossible for a person to absolutely and completely convinced of any disputed fact that by its nature is not susceptible of mathematical certainty.
>
> Consequently, in a criminal case it is sufficient if the proofs show that a defendant is guilty beyond a reasonable doubt, not beyond all possible doubt.

8

> If the jury views the evidence in the case as reasonably permitting either of two conclusions, one of innocence, the other of guilt, the jury should, of course, adopt the conclusion of innocence. But if, after a fair and impartial and careful consideration of all the evidence, you have a reasonable doubt as to a defendant's guilt, you must find him not guilty. If, on the other hand, after such a fair, impartial and careful consideration of all the evidence, you are convinced of the guilt of a defendant beyond a reasonable doubt, it is your duty to return a verdict of guilty.

(Transcript of trial, 12.109-11).

The portion of the jury instructions that Petitioner puts directly in question is the "two-inference" portion of the above-recited instructions. Petitioner references *United States v. Inserra*, 34 F.3d 83 (2d Cir. 1994) as a court of appeals that has found that the use of a "two-inference" instruction is improper as it "may mislead a jury into thinking that the government's burden is somehow less than proof beyond a reasonable doubt." *Id.* at 91. However, Petitioner fails to refer to the binding Third Circuit opinion of *Isaac*.

In *Isaac*, the Third Circuit considered a trial court's reasonable doubt jury instructions, which closely mirrors the instructions given in Petitioner's case. In particular, the "two-inference" language in Petitioner's jury instructions exactly mirrors the "two-inference" language that the *Isaac* court contemplated. The Third Circuit, noting the findings of *Inserra*, nevertheless held that "[a]lthough we disapproved of the 'two-inference' instruction . . .we did not hold that the instruction was so constitutionally deficient *per se* that it infected the entire instruction on reasonable doubt. The Third Circuit held that the remainder of the reasonable doubt jury instruction was to be reviewed to determine whether the "deficiency" of the "two-inference" language was "rectified" by any other reasonable doubt language. Ultimately, the Third Circuit found that the trial court had "adequately" conveyed the government's burden of proof as the jury

instructions repeatedly stated that the government was required to prove its case beyond a reasonable doubt, and that the jury instructions, taken as a whole, were not constitutionally defective.  *Isaac* at 204.

Regarding the jury instructions at bar, this Court finds that the instructions as a whole provided the jury with a full understanding of the definition of the reasonable doubt standard and that the government was required as a matter of law to prove its case beyond that standard. Specifically, the instructions informed the jury that Petitioner was to be presumed innocent unless proven guilty beyond a reasonable doubt.  The jury was instructed as to what could constitute reasonable doubt.  The jury was also instructed that reasonable doubt did not mean a finding of guilt beyond all possible doubt.  These instructions rectified any deficiencies the "two-inference" instruction may have presented, and they are the instructions that are commonly used today.  Additionally, they closely follow the jury instructions utilized in *Isaac*, which were found to be, taken as a whole, sufficient to satisfy constitutional due process.

As such, this Court finds that the jury instructions regarding reasonable doubt utilized in Petitioner's trial were adequate and Petitioner's trial counsel cannot be found to be ineffective for failing to object to their usage as trial counsel was not deficient in his performance.

### b.   *Pinkerton* liability

Petitioner next argues that his trial counsel was ineffective for failing to object to erroneous *Pinkerton* instructions given to the jury by the trial court, specifically, that the trial court failed to instruct on the element of "reasonable foreseeability" as *Pinkerton* requires.

The United States Supreme Court enunciated the doctrine in question in *Pinkerton v. United States*, 328 U.S. 640, 646-47.  The *Pinkerton* doctrine imposes vicarious liability on a

coconspirator for the substantive offenses committed by other members of the conspiracy when the offenses are during and in furtherance of the conspiracy.  Pursuant to the findings of the Supreme Court, the Third Circuit requires proof by the government that the defendant was a member of the conspiracy in question, that the coconspirator committed a substantive crime, and that the crime was in furtherance of **and** a foreseeable consequence of the conspiracy.  *See United States v. Turcks*, 41 F.3d 893, 897-98 (3d Cir. 1994) (emphasis added).

A careful review of the transcript of the jury instructions demonstrates that the trial court instructed the jury with regard to the "in furtherance" requirement but not the "foreseeable consequence" requirement.  Therefore, Petitioner has establish a prima facie case that the trial court erred in its instruction, and that trial counsel failed to object to said error.

However, as Respondent notes, the instructions in question were not given with respect to any of the substantive counts, but rather, were only given as part of some of the predicate acts to the RICO conspiracy charge.  (Tr. at 12.67-80) (trial court determining that it would not charge *Pinkerton* liability with regard to the substantive counts).

Further, after careful review of the trial transcript, the Court finds that the evidence linking Petitioner to the predicate acts was very strong, and therefore, under a plain error analysis (as required under *Turcks*) it was "highly unlikely that the jury convicted [Petitioner] of the substantive offense solely on the basis of the erroneous *Pinkerton* charge." *Id.* at 899.

As such, this Court finds that Petitioner was not unduly prejudiced by the charge, and that trial counsel's failure to object to the *Pinkerton* charges does not satisfy the prejudice prong of the *Strickland* analysis.  Petitioner's motion for relief on this basis is therefore denied.

11

### c.        RICO operation or management test

Petitioner's next contention is trial counsel's failure to object to the trial court's jury instructions on the RICO operation or management test.  Petitioner fails to point specific language within the jury instructions to which trial counsel should have objected, but instead argues that "[he] did not and never was intended to participate in the management or operation of the enterprise in question."  This Court will nevertheless consider the language given to the jury to determine its propriety.

In charging the jury regarding the RICO operation or management test, the trial court stated, in relevant part:

> . . . a person is associated with an enterprise if he participates directly or indirectly in the conduct of its affairs.  Likewise, one who consciously aids or furthers the business or income or the policies of the enterprise is deemed to be associated with it.  One need not have an official position in the enterprise in order to be associated with it.  This element is satisfied if the evidence shows that a defendant was associated with the enterprise by means of an informal or loose relationship.  Associate has its plain meaning.  It means to be joined, often in a loose relationship, as a partner, fellow worker, colleague, friend, companion or ally . . . if you find beyond a reasonable doubt that . . . [Petitioner] was employed by or associated with that enterprise, there is one final element that the United States must prove beyond a reasonable doubt before you may convict that defendant on Count One.  That is that the defendant knowingly and willfully agreed to conduct or participate in conduct of the affairs of the enterprise through a pattern of racketeering activity.  In order for the United States to prove that a defendant agreed to conduct to participate in the conduct of the affairs of the enterprise, the United States must prove that the defendant agreed to take some part in the operation or management of the enterprise.

(Tr. 12.158).

In determining whether the trial court instructed the jury properly, we turn to the United States Supreme Court opinion in *Reves v. Ernst & Young*, 507 U.S. 170 (1993), as interpreted by the Third Circuit in *United States v. Parise*, 159 F.3d 790 (3d Cir. 1998).  There, the Court held

as follows:

> According to *Reves*, '[i]n order to 'participate, directly or indirectly, in the conduct of such enterprises affairs,' one must have some part in directing those affairs.  However, one need not hold a formal position within the enterprise in order to 'participate' in its affairs.  Further, the 'operation or management' test does not limit RICO liability to upper management because 'an enterprise is 'operated' not just by upper management but also by lower-rung participants in the enterprise who are under the direction of upper management.' (*Reves* at 184).  In so holding the [Supreme Court] made clear that RICO liability may extend to those who do not hold a managerial position within an enterprise, but who do nonetheless knowingly further the illegal aims of the enterprise by carrying out the directive of those in control.

*Parise* at 796.

Pursuant to the Third Circuit's holding, Petitioner was not required to be a member of management to be liable under RICO.  Therefore, the trial court's instructions were wholly proper, and trial counsel was not ineffective for failing to object.  Petitioner's request for relief on this basis is denied.

### d.    jury instructions regarding specific intent

Next, Petitioner argues that the trial court provided erroneous instructions regarding hostage taking, kidnapping and all other specific intent crimes by which he was convicted, and that trial counsel was ineffective for failing to object to said instructions.  Specifically, Petitioner alleges that the trial court failed to instruct that he had knowledge and intent when the offenses were committed, i.e. the element of specific intent, as applicable to hostage taking, kidnapping, RICO and conspiracy.

The instructions given by the trial court regarding kidnapping and hostage taking, as with each of the instructions for the offenses charged closely mirror if not exactly duplicate previous instructions given and approved in the past (and subsequent to) by trial courts and the Third

13

Circuit.  Furthermore, the trial transcript demonstrates that the court had indeed informed the jury that they must be convinced, beyond a reasonable doubt, that Petitioner acted knowingly and willfully to be found guilty of the offenses charged.  (Tr. at 12.122-23).

Because the trial court properly instructed the jury regarding specific intent, Petitioner's trial counsel was not ineffective for failing to object and relief on this basis is denied.

### e.    cumulative effect

Petitioner contends that even if the instructions individually fail to demonstrate ineffective assistance of counsel, that the instructions in the aggregate amount to the constitutional violation.  To find cumulative error, Petitioner must show: (1) that at least two errors were committed in the course of the trial; and (2) considered together, the multiple errors so infected the jury's deliberation that they denied the defendant a fundamentally fair trial.  *Reid v. Vaughn*, 109 Fed. Appx. 500 (2004).

However, as previously stated, Petitioner has failed to demonstrate any errors made by the trial court, save the potential error regarding the *Pinkerton* charge.  However, this Court has found that the error did not constitute plain error.  Therefore, cumulative error cannot be found, and Petitioner's request for relief shall be denied.

### ii.    *failure to call alibi witnesses*

Petitioner contends that trial counsel was ineffective for his failure to call an alibi witness on Petitioner's behalf.  Petitioner, in support of his contention, states that he provided the names of two witness that were never called to testify.  Petitioner further states that the witnesses were both employers who knew him and knew his work schedule during the time the offenses were alleged to have been committed, and that they would testify that Petitioner was working two jobs

14

and that would have proven that he had no time to participate in the crimes alleged.

In response, trial counsel submitted an affidavit which states, in relevant part, that the names of two employers were provided to him by Petitioner as possible alibi witnesses. Trial counsel further affirms that he had his investigator interview the witnesses, who then claimed that they "did not remember" Petitioner. Trial counsel concludes in his affidavit that he determined that the two individuals were incapable of providing an alibi defense, and that after further investigation, trial counsel located a different employer who he did call to testify and who did testify as to Petitioner's work history and knowledge of the English language. (Pedicini Aff. ¶¶ 1, 2, 8, 9).

Courts have held that a failure to investigate can constitute ineffective assistance of counsel. *McAleese v. Mazurkiewicz*, 1 F.3d 159, 172 (3d Cir. 1993). When an attorney for a defendant does conduct investigation, however, "strategic choices [made thereafter] are virtually unchallengeable . . ." *Id.* Further, courts have found that the determination on whether to call a witness lies soundly with the trial counsel, not the defendant. *Government of Virgin Islands v. Weatherwax*, 77 F.3d 1425, 1434 (3d Cir. 1996).

Here, Petitioner's trial counsel was provided with the names of two employers which trial counsel, through his investigator, interviewed. The witnesses claimed to not "remember" Petitioner. Trial counsel determined that their failure to remember Petitioner eliminated any value that they may have had as alibi witnesses, and as a result, chose not to call them to the stand. Rather, trial counsel continued searching for witnesses and found another employer who did remember Petitioner, and who testified to Petitioner's schedule and ability to speak and understand English. Based on the information provided, trial counsel's determination not to call

15

the witnesses was sound and demonstrates, not ineffective assistance, but rather a high level of competency.

Additionally, it is doubtful that an establishment of a busy work schedule would have insulated Petitioner from conviction.  Petitioner's participation during the events alleged consisted of the usage of his home to store the aliens, and the providing of firearms, two efforts that hardly required his presence.

Therefore, Petitioner's trial counsel was not ineffective for failing to call witnesses that did not remember Petitioner.  Petitioner's motion for relief on this basis is denied.

### iii.    *plea negotiations*

Petitioner argues that had he been fully aware of the "circumstances of the plea offer and what exactly he was facing by going to trial, he would have taken the plea agreement."  (Pet. Brief, p. 44).  Petitioner asserts that trial counsel informed him that if he went to trial and was found guilty, "under the Federal Sentencing Guidelines, the maximum sentence the court could impose could be ten years."  (*Id.* at 46).  Further, Petitioner argues that trial counsel failed to explain the *Pinkerton* rule and that he was unaware when he turned down the Government's plea offer that he could be liable for the kidnapping and hostage taking the other members of the conspiracy had engaged in.  Petitioner asserts that trial counsel encouraged him to go to trial on "[Petitioner's] assertions that he did not kidnap anyone nor take anyone hostage."  (*Id.*).  If not for trial counsel's erroneous advice, Petitioner argues that he would have taken the plea offer, secured a three-level decrease under the Sentencing Guidelines, and potentially additional downward departures had he acknowledged sufficient "allocutory evidence."

16

In trial counsel's affidavit, he states that he did explain the Sentencing Guidelines to Petitioner, and the possible sentence he might receive.  Trial counsel further affirms that he did not tell Petitioner that he could not receive a sentence of more than ten years after trial.  Further, trial counsel attempted, on numerous occasions, to explain to Petitioner the concepts of conspiracy and *Pinkerton* liability, but that Petitioner was unable to grasp the concepts.  (Pedicini Aff. ¶¶ 4, 8).  Further, as the transcript shows, trial counsel communicated Petitioner's inability to understand the conspiracy and *Pinkerton* concepts on the record to the sentencing court, and the sentencing court itself acknowledged Petitioner's inability to understand the aforementioned concepts.  Specifically, trial counsel stated:

> It was not inability to say, to admit that which he did [RICO conspiracy liability for acts by which Petitioner was not a direct participant].  It was an inability to grasp the RICO concept.  He and I spent a long time together, and I did my best to explain what a RICO conspiracy entails, how an individual can be guilty of a RICO conspiracy for certain offenses, even if he is not aware of other offenses that are being committed.  It was very, very difficult for him to grasp the concept . . . I was unable to, or he wasn't able to accept the concept of RICO.

The sentencing court agreed with trial counsel and stated " . . . I think the heart of the situation here lies in Mr. Pham's inability or perhaps unwillingness to understand the concept not only of RICO, but also our conspiracy law . . . Of one thing I am certain: That [trial counsel] has explained it to his client meticulously, and repeatedly."  (Tr. at pp. 11-12).

This Court finds that sufficient evidence has been provided by Respondent to show that Petitioner was advised properly regarding the sentence he was facing if he pled guilty, or if he went to trial.  The Court further finds that Petitioner went to trial based, not on misinformation given by trial counsel, but rather, Petitioner's own inability to understand that he could be found guilty and held accountable for the significant actions of his coconspirators.  As such, Petitioner

has failed to demonstrate that trial counsel was ineffective and Petitioner's request for relief regarding plea negotiations is denied.

### iv.   *Double Jeopardy*

Petitioner next asserts that his trial counsel was ineffective because he failed to object to the multiplicity in both the charging and sentencing of Petitioner.  In support of his argument, Petitioner refers to the eight count Indictment as multiplicious and violative of the double jeopardy clause of the United States Constitution.  Petitioner states that Counts One through Seven of the Indictment charge separate crimes for one single offense.  Petitioner further argues, in a separate section of his brief, that his conviction for hostage taking and kidnapping violated double jeopardy provisions as well.

To determine whether a single offense can be charged under two or more separate criminal provisions, a court must determine whether each offense "requires proof of a fact which the other does not . . ."  *Blockberger v. United States*, 284 U.S. 299 (1932); *see also Whalen v. United States*, 445 U.S. 684, 691 (1980).

After careful review of the charges on which Petitioner was convicted, this Court concludes that each required a proof of fact that the other did not, and therefore, no violation of double jeopardy exists.  For example, and consistent with Petitioner's focus in his moving brief, the elements of proof for a charge of kidnapping are noticeably different from hostage taking and do require different facts.

As charged to the jury in the trial at issue, the elements of kidnapping are: (1) that the defendant knowingly and willfully seized, confined, kidnapped, abducted or carried away the person named in the indictment; (2) that the person named in the indictment was thereafter

18

transported in interstate commerce while so seized, confined, kidnapped or abducted; and (3) the defendant held the person named in the indictment for ransom, reward or other benefit or reason. (Tr. at 13.53).

Conversely, the elements of hostage taking are: (1) that the defendant seized or detained another person; (2) that the defendant threatened to injure or continued to detain that person; and (3) that the defendant did so with the purpose of compelling a third person to act in some way or to refrain from acting in some way.  (Tr. at 13.55).

Upon review, the most significant additional fact required in a kidnapping charge which is not required in a hostage taking charge is the transportation of the victim in interstate commerce.  This alone requires proof of an additional fact and satisfies the *Blockburger* test.  *See United States v. Santos-Rivera*, 183 F.3d 367, 370 (5th Cir. 1999) (holding that "the two statutes [kidnapping and hostage taking] should not be construed to be redundant").

The Court therefore finds that Petitioner was not subjected to any double jeopardy violations regarding the charges with which he was convicted and sentenced upon.  Further, Petitioner's trial counsel cannot be found ineffective for failing to object on the grounds of double jeopardy.  Petitioner's motion for relief on the basis of double jeopardy is denied.

     **v.**     ***petitioner's failure to testify***

Petitioner's next basis for relief focuses upon trial counsel's claimed refusal to allow him to testify at trial on his own behalf "despite his desire to do so."  (Pet. Brief, p. 55).  Respondent argues, in response, that Petitioner is time-barred from raising this claim under the Antiterrorism and Effective Death Penalty Act of 1996 (hereinafter "AEDPA"), and also procedurally barred for failing to show just cause for failing to raise this claim during his direct appeal.  The Court

concurs.

Specifically, under the AEDPA, a federal prisoner must file his habeas petition within one year from the date on which his judgment of conviction becomes final. *White v. United States*, 2005 WL 2493381 at *1 (Oct. 7, 2005). The date a conviction becomes final is 90 days after a federal prisoner's appeal is decided (the time permitted to motion for certiori with the United States Supreme Court) or, if the prisoner does file for certiori, the date that motion is denied or reviewed and decided upon by the Supreme Court. Further, a petitioner cannot add additional basis for ineffective assistance of counsel in an amended § 2255. *White* at *5 ("As the Supreme Court 'recently made crystal clear, a petitioner does not satisfy the Rule 15 'relation back' standard [of the Federal Rules of Civil Procedure] merely by raising some type of ineffective assistance in the original petition, and then amending the petition to assert another ineffective assistance claim based upon an entirely distinct type of attorney malfeasance'") (citing *Mayle v. Felix*, 545 U.S. 644 (2005).

Here, Petitioner's conviction became final on March 15, 1999. Petitioner timely filed his original petition on September 20, 1999. On December 26, 2006, Petitioner filed his amended petition. The issue of whether trial counsel prevented Petitioner from testifying on his own behalf was not raised in the original petitioner. Because the December 26, 2006 petition was filed well beyond the time limitations set forth by the AEDPA, and because a petitioner cannot utilize the relation back standard under F.R.Civ.P. 15, Petitioner is time-barred from raising this issue in the present petition.

Assuming, *arguendo*, that Petitioner was not time-barred from raising the instant issue in his present petition, this Court would nevertheless be procedurally barred from considering said

20

issue on the merits as Petitioner fails to address just cause as to why the issue was not raised during his direct appeal.  Specifically, in *United States v. Essig*, 10 F.3d 968 (3d Cir. 1993), the Third Circuit held that a defendant seeking to raise in a § 2255 motion a claim that he failed to raise at trial, sentencing, or direct appeal, must show both "cause" for failing to raise the claim in those proceedings and "actual prejudice" resulting from the claimed error.  *Id.* at 979.  Here, Petitioner did not raise his inability to testify at his trial, sentencing or in his direct appeal. Petitioner also fails to attempt to show, or even to discuss, just cause for failing to raise the claim in prior proceedings.

Therefore, because Petitioner is time-barred and procedurally barred from raising the issue of his failure to testify at trial, his motion for relief on this basis is denied.

### vi.   *sentencing issues*

Petitioner's final group of issues encompasses ineffective assistance of trial counsel at sentencing.  Petitioner individually addresses each sentencing issue.  The Court will consider each of Petitioner's claims in turn.

### a.   grouping

Petitioner contends that trial counsel was ineffective for failing to object to the use of United States Sentencing Guideline § 3D1.2 (the grouping rule) (hereinafter "USSG"). Petitioner argues that there was no victim in his case and counting boats as "victims" is error.

Although the sentencing court could have considered each illegal alien as a separate victim, the court chose to identify five victims from among the hundreds involved in the charged conspiracy, and considered them as separate groups.  (Presentence Report at ¶ 90) (hereinafter "PSR").

21

Pursuant to USSG § 3D1.1, when a defendant has been convicted of more than one count, the sentencing court should: (1) group the counts into groups of closely related counts; (2) determine the offense level applicable to each group; and (3) determine the combined offense level.  USSG § 3D1.2 provides the procedure for determining what are groups of closely related counts, and its subsection, § 3D1.2(d) provides those counts which should not be grouped, including kidnapping and hostage taking.  *See* USSG § 2A4.1; PSR at ¶¶ 91, 99, 106, 113 and 120.  Further, as the PSR clearly explains, the reference to the boats was merely a shorthand reference to the actual alien victims.  PSR at ¶¶ 90-126.

Therefore, the sentencing court did not error in failing to group Petitioner's offenses, and trial counsel was not ineffective for failing to object to the sentencing court's proper use of the USSG grouping rules.

### b.    six point adjustment for ransom demand

Petitioner next contends that since he "never made a ransom demand," the six level enhancement he received under USSG § 2A4.1(b)(1) for making a ransom demand was error, and trial counsel was ineffective for failing to object to said enhancement.

As Petitioner was convicted of conspiracy, he was liable for the actions of his coconspirators.  Under USSG § 2A4.1(b)(1), "if a ransom demand or a demand upon government was made, increase by six levels."  Therefore, because the aliens were forced to call relatives for payments before they could be released, the six level enhancement was appropriate, and trial counsel was not ineffective for failing to object.  Petitioner's motion for relief on this basis is denied.

#### c.      enhancement of sentence for use of a firearm

Petitioner argues that double jeopardy and double counting was again unlawfully imposed during sentencing because of the firearm enhancement for his conviction under 18 U.S.C. § 924(b) pursuant to the holding in *United States v. Knobloch*, 131 F.3d 366 (3d Cir. 1997).

In *Knobloch*, the Third Circuit found that a sentence under 18 U.S.C. § 924(c) (carrying a firearm during and in relation to a drug crime) prevented an enhancement under the USSG for said possession.

However, in this case, Petitioner was convicted pursuant to 18 U.S.C. § 924(b), not 924(c), to which there is no procedural bar for a firearm enhancement.  Petitioner's motion for ineffective assistance of counsel on this basis is therefore denied.

#### d.      Ex Post Facto

Petitioner next argues that an upward victim related adjustment applied to his sentence under USSG § 3A1.1 violated his rights under the ex post facto clause of the United States Constitution, as a "series of Sentencing Guidelines that were not in effect when the offenses alleged were committed" was applied.  (Pet. Brief, p. 70).

However, Petitioner again mistakenly applies the incorrect guideline section to the law. Although USSG § 3A1.1(a) was added by amendment as of November 1, 1995, that section was not applied to Petitioner.  Instead, the sentencing court applied USSG § 3A1.1(b).  PSR at ¶¶ 95, 102, 109, 116 and 123.  Therefore, Petitioner's ex post facto rights were not violated by the sentencing court, and trial counsel was not ineffective for failing to object to a properly applied sentencing guideline.  Petitioner's motion on this basis is denied.

**e.      hostage taking guideline**

Petitioner next argues that the guideline applied to his offense of hostage taking was different in 1993 than in 1995 and that the wrong version was applied to him.

The Court finds that the use by the sentencing court of USSG § 2A4.1 was appropriate, and that there is no difference in analysis or penalty in the 1993 and 1995 versions.  Petitioner's motion is therefore denied.

**f.      downward adjustment under USSG § 2X1.1**

Petitioner's final issue for this Court's consideration is his contention that the sentence imposed for "all of the various conspiracy offense" was improperly calculated because the sentencing court failed to apply a three point downward adjustment under USSG § 2X1.1.

USSG § 2X1.1(b)(2) states, in relevant part:

> [apply base offense level plus any adjustments, including] if a conspiracy, decrease by 3 levels, unless the defendant or a coconspirator completed all the acts the conspirators believed necessary on their part for the successful completion of the substantive offenses or the circumstances demonstrate that the conspirators were about to complete all such acts but for apprehension or interruption by some similar event beyond their control.

This Court concludes that the sentence court properly determined that Petitioner was not eligible for this three point deduction.  The conspirators in this case had already successfully completed all the acts for at least one successful completion of the substantive offenses, and were continuing to conspire and take overt actions to continue another group of substantive offenses until they were arrested by the United States Coast Guard and federal law enforcement.

Further, the cases to which Petitioner cites are distinguishable because in those cases, the substantive offenses never occurred.  Finally, assuming *arguendo* that Petitioner was entitled to a

three point deduction, said deduction would not have had any impact on his sentence because the conviction on Count Three was grouped with Counts One, Two, Four, Five, Six, seven and Nine. PSR at ¶¶ 85-140.

As such, trial counsel could not be found to be ineffective for Petitioner's failure to receive a three-point deduction that he was not entitled to and would have failed to decrease his time of incarceration.  Petitioner's motion is denied.

## IV.   CONCLUSION

For the reasons stated herein, Petitioner's motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255  is denied and the petition is dismissed with prejudice.  An appropriate form of order is filed herewith.


s/Garrett E. Brown, Jr.
**GARRETT E. BROWN, JR.**
**CHIEF UNITED STATES DISTRICT JUDGE**


Date:   February 16, 2007